IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>v.<br><br>ROBERT HUGHES BELL, III,<br><br>        Appellant. | No. 87064-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Robert Hughes Bell III appeals his conviction for felony harassment – domestic violence based on a Facebook post in which he threatened to kill his wife, Rebecca Bell. Bell asserts (a) the State presented insufficient evidence to support his conviction in light of the date included in the to-convict instruction, (b) the prosecutor committed misconduct by misstating the law during rebuttal closing argument, (c) the jury instruction defining a "threat" violated the First Amendment under *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023), (d) improper testimony regarding his invocation of his right to counsel and his right to remain silent violated his due process protections, (e) cumulative error deprived him of a fair trial, and (f) the victim penalty assessment (VPA) and DNA collection fees imposed at sentencing must be stricken. Because the to-convict instruction provided to the jury at trial included a specific date for the first element of the felony harassment charge and there is

insufficient evidence supporting that element, we remand for dismissal and vacation of Bell's conviction and do not address his other arguments.

I

Rebecca and Robert Bell were married for about 27 years.[1]  They resided together with Rebecca's two children in a house in Montesano, Washington.  Bell frequently spent his evenings in the house's mudroom drinking and sending Rebecca insulting messages on Facebook Messenger or via text.  On the evening of June 18, 2022, Bell was "drinking pretty heavily" and sent Rebecca insulting messages calling her, among other things, "the B-word, the C-word, [and] pathetic Mexican."

The next morning, on June 19, Deputy Justin Blake with the Grays Harbor County Sheriff's Office was dispatched to conduct a welfare check on Rebecca based on a reporting party's 911 call.  After talking with the 911 caller and gathering more information, Deputy Blake determined it was necessary to conduct an in-person welfare check.  Deputy Justin Rivas and Deputy Dane Walter of the Grays Harbor County Sheriff's Office accompanied Deputy Blake on the welfare check.  The deputies arrived at the house and knocked on the living room windows, waking Rebecca up.

When Rebecca opened the door, the deputies showed her a screenshot of a Facebook post that a friend of hers had sent the deputies.  The screenshot captured a post that Bell had created on his Facebook account and had tagged Rebecca in.  The post stated, "When my bitch wive [sic] sleeps [I] think about

---

[1] Because Rebecca and the defendant share the same last name, we use her first name for clarity.

getting my [.]17 and making her face look[ ]better. Looking forward to killin. . . . " The last word in the post was not clearly shown in the screenshot because it was obscured by the device's volume bar. The screenshot was taken at "9:22" (without specifying a.m. or p.m.) and the threat to kill Rebecca was posted seven hours before that. Rebecca also received screenshots of the Facebook post from other individuals but could not find it on Facebook herself because Bell had deleted it.

When the deputies showed Rebecca the threat, she was scared for herself and her kids, and she believed Bell was capable of carrying out his threat. Rebecca allowed the deputies to enter the house, and they found Bell asleep in the bedroom. The deputies also found Bell's .17 HMR rimfire rifle in the bedroom. The deputies arrested Bell based on the threat he made in his Facebook post and transported him to jail. During transport, Bell stated, "I can't believe I can be arrested over a Facebook post. We never physically touched."

Bell was charged with felony harassment – domestic violence. During trial, the State called three witnesses—Deputy Blake, Deputy Rivas, and Rebecca— and introduced the screenshot of Bell's Facebook post that the deputies had shown Rebecca on June 19. Following the close of evidence, the trial court read the jury instructions to the jurors and provided copies of the instructions to the jurors for their deliberation. The jury found Bell guilty as charged. The trial court imposed a standard range sentence of 45 days of confinement followed by 6-12 months of community supervision (depending on domestic violence and substance abuse treatment recommendations) as well as the VPA and DNA collection fees that were mandatory at the time of Bell's sentencing hearing. This timely appeal

followed.

II

Bell argues the State failed to present sufficient evidence that he threatened to kill Rebecca "on or about June 19, 2022." We agree.

"Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt." *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017) (citing U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3). In determining whether sufficient evidence supports the jury's verdict, we must assess "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Zghair*, 4 Wn.3d 610, 619-20, 567 P.3d 1 (2025) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Circumstantial and direct evidence are equally reliable, but inferences based on circumstantial evidence must be reasonable and cannot be based on speculation. *Id.* at 620. While a sufficiency challenge "admits the truth of the State's evidence and accepts the reasonable inferences to be made from it," *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007), the existence of a necessary fact of an offense "cannot rest upon guess, speculation, or conjecture." *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006).

Under the law of the case doctrine, "'the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction.'" *Johnson*,

188 Wn.2d at 756 (quoting *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998)).  Even an erroneous to-convict instruction "creates a new element of the crime" that the State is required to prove beyond a reasonable doubt.  *State v. France*, 180 Wn.2d 809, 815, 329 P.3d 864 (2014).  Such added elements become the law of the case because the to-convict instruction "'serves as a yardstick by which the jury measures the evidence to determine guilt.'"  *Johnson*, 188 Wn.2d at 760, 761 n.8 (quoting *France*, 180 Wn.2d at 815).

Here, the to-convict instruction provided to the jury states:

To convict the Defendant of the crime of Felony Harassment, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That *on or about June 19, 2022*, the Defendant Robert Hughes Bell, III, knowingly threatened to kill Rebecca Bell immediately or in the future;

(2) That the words or conduct of the Defendant placed Rebecca Bell in reasonable fear that the threat to kill would be carried out;

(3) That the Defendant acted without lawful authority; and

(4) That the threat was made or received in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

(Emphasis added.)  Accordingly, applying the law of the case doctrine, the State was required to prove that Bell threatened to kill Rebecca "on or about June 19, 2022."

A thorough review of the record reveals the State failed to introduce evidence of when Bell threatened to kill Rebecca. None of the State's three witnesses testified as to the date of the Facebook post. While Rebecca testified that Bell had been drinking heavily and had been sending her insulting messages on June 18, 2022, there was no evidence to establish that this occurrence was unique to that night. Instead, Rebecca testified that Bell would drink and send her such messages "quite frequently." Deputy Blake's testimony likewise did not establish the date Bell threatened to kill Rebecca. Deputy Blake merely testified that he decided to conduct an in-person welfare check based on his conversation with the 911 caller. The State did not call the 911 caller as a witness or elicit evidence of when the 911 caller discovered Bell's Facebook post. Nor did the screenshot of Bell's Facebook post establish the date that Bell threatened to kill Rebecca. The only reasonable inference that a jury could draw from the evidence at trial is that Bell threatened to kill Rebecca seven hours before "9:22" (a.m. or p.m.) on some unspecified date. This is insufficient to satisfy the to-convict instruction and due process.

Despite this, the State asserts the evidence introduced at trial is nevertheless sufficient to support Bell's conviction for several reasons. First, the State claims it was not required to prove the specific date Bell made the threat because RCW 9A.46.020, the harassment statute, does not include time as a material element, and the language used in the to-convict instruction came directly from the pattern jury instruction. Regardless of where the language used in the to-convict instruction originated, the State assumed the burden of proving *all* the

elements, even unnecessary ones, included in the to-convict instruction without objection. *See Johnson*, 188 Wn.2d at 756, 760. Because the language "on or about June 19, 2022" was included in the to-convict instruction, the date, while an unnecessary element under the statute, became an essential element under the law of the case doctrine. *See State v. Sanchez*, 31 Wn. App. 2d 372, 380, 554 P.3d 373 (2024).

Second, citing *State v. Hayes*, 81 Wn. App. 425, 914 P.2d 788 (1996), the State claims that "Washington courts have repeatedly held that where time is not a material element of the charged crime, the language 'on or about' is sufficient to admit proof of the act at any time within the statute of limitations, so long as there is no defense of alibi." But the instant case is distinguishable from *Hayes* and other sexual assault cases where courts have followed such a rule. In *Hayes*, the date on which the defendant sexually abused his young daughter was established by the evidence. *Id.* at 432. Here, in contrast, the State failed to introduce evidence from which a reasonable inference could be drawn that Bell threatened Rebecca on any specific date within the applicable statute of limitations. Any such inference would be based on impermissible "guess, speculation, or conjecture." *See Colquitt*, 133 Wn. App. at 796.

Third, the State argues the evidence shows that Bell threatened Rachel on or about June 19, 2022 because the crime of harassment was completed on June 19, 2022 when the deputies showed Rebecca the threat and when Rebecca was placed in reasonable fear that the threat would be carried out. This argument misreads the to-convict instruction. The temporal element—"on or about June 19,

2022"—is set forth in the first element regarding the date on which Bell knowingly threatened to kill Rebecca and not in the second element regarding Rebecca's reasonable fear that the threat to kill her would be carried out. Thus, the State's argument regarding when Rebecca was placed in such fear is irrelevant to the issue on appeal.[2]

Last, the State claims that, pursuant to RCW 9A.46.030, the charged harassment may be "deemed" to have occurred when Rebecca received the threat from law enforcement on June 19, 2022. The State's reliance on RCW 9A.46.030 is misplaced. RCW 9A.46.030 states

> **Place where committed**.
>
> Any harassment offense committed as set forth in RCW 9A.46.020 or 9A.46.110 may be deemed to have been committed where the conduct occurred or at the place from which the threat or threats were made or at the place where the threats were received.

RCW 9A.46.030. As the title and plain language of this statute reflect, RCW 9A.46.030 is concerned with the location of harassment, not the timing or date of harassment. Thus, the statute cannot be utilized to satisfy the temporal element of the to-convict instruction.

---

[2] Nor does the State cite any case law holding that felony harassment occurs on the date when law enforcement communicates a defendant's threat to its intended target. "Where, as here, 'a party cites no authorities supporting [their] argument, we may assume that counsel searched diligently and found none.'" *State v. Griffin*, 30 Wn. App. 2d 164, 176-77, 544 P.3d 524 (2024) (quoting *Carter v. Dep't of Soc. & Health Servs.*, 26 Wn. App. 2d 299, 317, 526 P.3d 874 (2023)). We decline to interpret the felony harassment statute in that fashion. *See State v. Veazie*, 123 Wn. App. 392, 396, 98 P.3d 100 (2004) ("Statutes must be construed to effect their purpose and to avoid strained or absurd results.").

III

"The proper remedy where the State does not present sufficient evidence of all the elements of the crime, including added elements, is to reverse the conviction and dismiss with prejudice." *State v. Blackburn*, __ Wn.2d __, 588 P.3d 393, 414 (2026) (citing *Hickman*, 135 Wn.2d at 103). Because the State's evidence is insufficient, we reverse Bell's conviction and remand with instructions for the trial court to dismiss the charge with prejudice. Accordingly, we do not address the other assignments of error raised in Bell's opening brief.

Feldman, J.

WE CONCUR: